UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUSTIN F., | : |
| | : |
|    *Plaintiff*, | : |
| | : |
| v. | :    No. 3:23-cv-1041 (SDV) |
| | : |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| | : |
|    *Defendant*. | : |

### RULING ON PLAINTIFF'S MOTION TO REVERSE DECISION OF COMMISSIONER AND DEFENDANT'S MOTION TO AFFIRM

Plaintiff brings this administrative appeal from the decision of the Commissioner of the Social Security Administration denying his application for a period of disability, disability insurance benefits and supplemental security income. For the reasons below, plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 13, is GRANTED and the Commissioner's Motion to Affirm, ECF 17, is DENIED.

### A. LEGAL STANDARDS

#### 1. Disability and eligibility

A claimant is disabled under the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be eligible for Title II disability insurance benefits, the claimant must establish the onset of disability during the period in which he or she was insured based on quarters of qualifying work. 42 U.S.C. § 423; *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). Alternatively,

Title XVI provides for supplemental security income benefits to claimants who are indigent and disabled, without reference to prior work.  *See* 42 U.S.C. § 1381 *et seq.*

### 2.  Commissioner's five-step review

The Commissioner of Social Security is authorized to make findings of fact and decide disability applications, *see* 42 U.S.C. §§ 405(b)(1), 1383(c)(1)(A), in accordance with the five-step sequential evaluation process provided in 20 C.F.R. §§ 404.1520, 416.920.  (1) First, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity.  (2) If not, the Commissioner determines whether the claimant has a medically determinable impairment or combination of impairments that are "severe," meaning that it "significantly limits" the claimant's physical or mental ability to do basic work activities.  (3) If the claimant has a severe impairment or combination of impairments, the Commissioner evaluates whether, based solely on the medical evidence, the claimant has an impairment that "meets or equals" an impairment listed in Appendix 1, Subpart P, No. 4 of the regulations (the "Listings") and that either is expected to result in death or has lasted or will last for at least 12 months. [1]  If so, the claimant is disabled.  (4) If not, the Commissioner determines whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his or her past work. [2]  (5) If not, the Commissioner determines whether there is other work in the national economy which the claimant can perform in light of his or her RFC, age, education, and work experience.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the

---

[1] *See* 20 C.F.R. §§ 404.1509, 416.909 (durational requirement).

[2] Residual functional capacity is the most a claimant can do in a work setting despite his or her limitations.  20 C.F.R. §§ 404.1545, 416.945.

2

burden of proof on the first four steps, and the Commissioner bears the burden of proof on the final step.  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The Commissioner's authority to make these findings and decisions is delegated to an administrative law judge ("ALJ").  *See* 20 C.F.R. §§ 404.929, 416.1429.  A claimant may request review of an ALJ's decision by the Appeals Council.  *See* 20 C.F.R. §§ 404.967, 416.1467.  If the Appeals Council declines review or affirms the ALJ's decision, the claimant may appeal to the United States District Court.  42 U.S.C. §§ 405(g), 1383(c)(3).

### 3. Court's review on appeal

A district court reviewing the Commissioner's final decision is performing an appellate function, *see Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981), and has the power to affirm, modify, or reverse the Commissioner's decision based on its review of the briefs and the administrative record.  *See* 42 U.S.C. § 405(g).  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error."  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

## B.  BACKGROUND

### 1. Procedural History

In June 2021, plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income.  R. 202-03, 212-13.  Both applications alleged an onset date of November 17, 2020.  *Id.*  The claims were denied at the initial review and reconsideration levels, and plaintiff requested a hearing.  R. 90-103, 108-23, 151-52.  On May 12, 2022, ALJ John Aletta conducted a video hearing at which plaintiff and a vocational expert testified.  R. 42-89.  On June 13, 2022, the ALJ issued a written

decision denying plaintiff's claims.  R. 19-34.  Plaintiff's request for review was denied by the Appeals Council, R. 1-6, and plaintiff filed this action on August 4, 2023.

### 2. Work history

Plaintiff was 24 years old at the alleged disability onset date of November 17, 2020.  His past relevant work includes maintenance supervisor, maintenance repairer, commercial cleaner, food service manager, and construction worker.  R. 49-51.

### 3. Overview of physical impairments

The Court assumes familiarity with the medical record and the recitation of the treatment history in plaintiff's brief.  ECF 13-1 at 4-16.  There are two key turning points in the record.  The first occurred on November 17, 2020, when plaintiff was in a severe motor vehicle collision.  R. 440.  He experienced ongoing severe lumbar pain, which was described in a December 2020 orthopedic record as "severe left-sided low back and sciatic pain radiating down along the posterior lateral aspect of the left hip and thigh crossing the knee to the anterior aspect of the shin down to the foot with complaints of tingling and numbness as well."  R. 468.  An MRI in early January 2021 showed "unusual finding of an osteophytic spur at the level of the disc at the level of L5-S1 with also facet arthropathy resulting in moderate foraminal stenosis on the left side," which led to a diagnosis of a lumber herniated disc.  R. 475.  Another MRI in March 2021 showed slight grade 1 retrolisthesis of L5 on S1 and a central disc herniation at L5-S1 that contacted the bilateral S1 nerve roots.  R. 519.  Several treatments were unsuccessful in relieving plaintiff's pain, including steroids, physical therapy, prescription anti-inflammatory medications, muscle relaxants, and gabapentin in late 2020 and early 2021 (R. 476, 522, 572); epidural steroid injections in February and March 2021 (R. 564, 569); a discectomy surgery in May 2021 (R. 522-24); additional epidurals in July, August, and October 2021 (R. 827, 1129); and Lyrica and

4

Tizanidine in November 2021 (R. 1263). Since the November 2020 collision, plaintiff used a cane, crutches, or a walker for ambulation due to pain and then began using a wheelchair in June 2021. R. 787. In October 2021, plaintiff's orthopedist prescribed a wheelchair at plaintiff's request. R. 1127.

The second turning point occurred in February 2022 when plaintiff underwent a trial for a spinal cord stimulator. Six days into the trial, he reported 60% pain relief (4 out of 10), 60% improvement in activities of daily living, mobility outside the house with a cane, and improved sleep. R. 1305. A permanent spinal cord stimulator was then surgically implanted in March 2022. R. 1322-23. Unfortunately, the record contains only one follow-up treatment note between the March 2022 device implantation and the ALJ's May 2022 hearing and June 2022 decision, which was merely a post-operative visit with a physician's assistant for removal of staples. R. 1294-95. At that time, plaintiff arrived in a wheelchair, but was able to rise on his own and stand during removal of surgical staples. R. 1294. He reported that he did not have adequate pain coverage yet but would meet with a trainer later that day to make programming adjustments to the device. R. 1294. *Id.*

### 4. Overview of mental impairments

Plaintiff's mental health history includes treatment for conversion disorder with some nonepileptic seizures, as well as treatment for PTSD with anxiety and depression. In the first relevant note in the record dated April 22, 2021, plaintiff reported to Babitha Mathew, APRN that the conversion disorder was diagnosed in 2014 at the Mayo Clinic. R. 558. As for the PTSD, plaintiff reported to APRN Mathew in April 2021 that it related to childhood trauma and that he had tried several different depression medications without success. R. 558. The record includes follow-up visits with APRN Mathew in September and December 2021 that mention

plaintiff had been meeting with a therapist but had to stop in September 2021 because he could not afford the co-pays. R. 842, 1177-79. In April 2022, APRN Mathew completed an opinion form in connection with plaintiff's disability application.

### C. ADMINISTRATIVE DECISION

#### 1. The ALJ's decision

In his June 2022 Decision, the ALJ found that plaintiff had the following severe impairments: retrolisthesis of the lumbar spine at L5-S1 with facet arthropathy and osteophytic spur of the lumbar spine (status post discectomy) and obesity. R. 22. The ALJ also found that plaintiff's mental impairments of posttraumatic stress disorder and conversion disorder were non-severe. R. 22-23. After finding that these impairments did not meet or medically equal a listed impairment, R. 24-25. He then determined that plaintiff had the residual capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) if further limited as follows:

> he must use a cane for walking; can occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; and cannot work at unprotected heights.

R. 25-32. At Step 4, the ALJ found that the plaintiff was not capable of performing past relevant work but concluded at Step 5 based on VE testimony that there were jobs that plaintiff could perform. R. 32-34. The ALJ therefore concluded that plaintiff was not disabled under the Social Security regulations.

#### 2. Evidence submitted to Appeals Council

Nine months after the ALJ's unfavorable decision, plaintiff submitted a treatment summary and opinion letter to the Appeals Council that was prepared by Dr. Brian Forzani, his pain management specialist. R. 11. In the March 20, 2023 letter, Dr. Forzani recounted that it took several months for plaintiff to optimize pain coverage with the device, and he still had some

nerve pain and deconditioning that limited his walking and were treated with physical therapy, Lyrica medication, and a hinged left knee brace.  *Id.*  Dr. Forzani noted that plaintiff had been released from physical therapy prior to their most recent interaction in January 2023.  *Id.*  At that visit, plaintiff told Dr. Forzani that "[h]e was still noting fatigue when walking over 10,000 steps per day.  However, he was able to find employment with a dispensary in Massachusetts."  *Id.*  Dr. Forzani found his prognosis to be fair: he had made mobility improvements but progress had begun to plateau, and he still had pain that limited his work capacity and ability to walk long distances.  R. 12.  Dr. Forzani assessed a 12% permanent impairment rating of plaintiff's lumbar spine, which would require ongoing maintenance and management.  *Id.*  He recommended restrictions of 20 lbs. lifting capacity, limited bending/twisting, and alternating sitting and standing in a work and home setting in order to avoid exacerbating the injury.  *Id.*

The Appeals Council concluded that the new evidence did not relate to the time period at issue in the ALJ's decision and declined to review plaintiff's case.  R. 1-2.

### D. DISCUSSION

Plaintiff's first claim is that the Appeals Council improperly failed to consider evidence submitted post-decision, namely, the March 20, 2023 treatment summary and opinion letter submitted by Dr. Forzani, his pain management specialist.  R. 11-13.  The regulations require the Appeals Council to review a case if, *inter alia*, it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).  Evidence is "new" if it has not previously been considered during the administrative process and is not cumulative of evidence already in the record.  *Milano v. Apfel*, 98 F. Supp. 2d 209, 215 (D. Conn. 2000).  Evidence is "material" if it is

7

(i) relevant to the time period for which benefits were denied and (ii) raises a reasonable probability that the new evidence would have influenced the Commissioner to decide the case differently. *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). When the Appeals Council fails to review a case in light of new and material evidence, the case should be remanded for reconsideration. *McIntire v. Astrue*, 809 F. Supp. 2d 13, 21 (D. Conn. 2010).

Here, the Appeals Council erroneously found that Dr. Forzani's March 2023 opinion letter did not relate to plaintiff's condition prior to the ALJ's June 13, 2022 decision. R. 2. The letter recounts a visit with Dr. Forzani on June 12, 2022, the day before the decision issued, and reveals that, in the months between the March 24, 2022 stimulator device implantation and the ALJ's decision, plaintiff was trying to "optimize coverage of his pain areas with the device," he "continued to have nerve pain and deconditioning that limited his walking," and he and Dr. Forzani discussed a trial of Lyrica to address persistent nerve pain symptoms. R. 11.

Not only is the new evidence relevant to the time period at issue in the ALJ's decision but there also is a reasonable probability that it would change the outcome. The impact of the permanent stimulator implanted in March 2022 is especially material given the ALJ's heavy reliance on plaintiff's prior six-day trial with a temporary stimulator device in February 2022, during which he reported 60% pain relief and was able to ambulate "more freely" without a wheelchair. *See* R. 1305 (February 2022 trial follow-up visit), R. 1296 (March 2022 pre-implantation visit). As detailed below, the ALJ relied on plaintiff's experience with the temporary device to reject Dr. Forzani's medical opinion, third-party statements by friends and family, and plaintiff' hearing testimony that addressed his ongoing difficulties even after implantation of the permanent stimulator in March 2022.

It seems the ALJ's heavy reliance on the temporary trial was due to the lack of treatment notes after the permanent stimulator was implanted. The only subsequent note in the record is from a surgical follow-up on April 11, 2022 for removal of staples. R. 1294. Otherwise, the post-implantation evidence in the record was all subjective. It included Dr. Forzani's April 28, 2022 opinion that stated: "His pain has failed to respond to standard treatments including injections, surgery, and spinal cord stimulator implant." R. 1331. It also included statements from friends and family signed in April and May 2022, R. 363-402, several of whom noted that the stimulator had not yet provided substantial relief. *See* R. 364 (stimulator surgery has given him "hope" but pain remains), R. 389 ("had to get a spinal cord stimulator put in his back to help manage his pain, but it doesn't seem to have helped yet"), R. 401 ("Recently, Justin was approved for a spinal cord stimulator to help manage his pain. It has yet to provide any pain relief but Justin still tries to remain optimistic."). The post-implantation record also included plaintiff's May 12, 2022 testimony, in which he stated: "The spinal cord stimulator was sort of the last hope. So I have a little hope with my back and my -- the stimulation in my leg which was hopeful, but it hasn't reduced the pain yet, so I'm not exactly sure what's going on with it or how to move forward with it." R. 66.

In discounting the opinion evidence and plaintiff's testimony, the ALJ referred repeatedly to the six-day trial of the temporary device. The ALJ found the post-implantation April 2022 opinion of Dr. Forzani's unpersuasive because "Dr. Forzani did not provide objective findings to support the limitations provided. His notation that the claimant has failed treatment methods including injections, surgery, and a spinal cord stimulator implant is not fully consistent with the record. Instead, the record shows significant benefit from the use of the stimulator." R. 30. The ALJ then rejected post-implantation statements from friends and family for similar reasons,

9

stating that "the more significant level of limitation opined [by family and friends] is not fully consistent with the record including reports that the use of an assistive device was not required, findings of no acute distress, and reported benefit from the use of the spinal stimulator."  R. 31.  And the temporary stimulator trial also factored into the ALJ's discrediting of plaintiff's post-implantation testimony: the ALJ's decision asserts that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence," R. 26, and cites the stimulator trial results as the primary evidence of improvement, R. 28.  In fact, the only post-implantation medical evidence cited by the ALJ was from the surgical follow-up for staple removal, R. 1294, which the ALJ cited as evidence that plaintiff could move from sit to standing on his own, although the ALJ did not acknowledge that plaintiff attended that appointment in a wheelchair.  R. 28.  The ALJ also did not mention plaintiff's report during that appointment that he did not feel he had adequate pain coverage from the device and needed to work with a trainer to program it.  R. 1294.

  The Court offers no opinion as to whether it was reasonable for the ALJ to infer that plaintiff's prognosis was radically and permanently improved based on a six-day trial of the temporary device, but Dr. Forzani's March 2023 letter to the Appeals Council reveals the existence of contemporaneous medical treatment that could eliminate the need for supposition.  The new evidence is fairly consistent with the subjective post-implantation evidence submitted by Dr. Forzani, friends and family, and plaintiff himself and, therefore, reasonably might have changed the ALJ's assessments of the objective evidence and the outcome of the decision in June 2022.

  Because the March 2023 letter provides new evidence that relates to the relevant period and reasonably could have changed the outcome of the decision, the Appeals Council erred when

it declined to consider it.  On remand, the Commissioner should consider any portions of Dr. Forzani's March 2023 submission that are relevant and material to plaintiff's functional capacity during the period under review.  *See Evans v. Colvin*, 649 F. App'x 35, 37 (2d Cir. 2016) (on remand, Appeals Council must consider new evidence that is material but not immaterial evidence).  Additionally, the Commissioner should consider whether there is an obvious and material gap in the record that requires further development of plaintiff's medical history during the period between the March 2022 stimulator implantation and the ALJ's June 13, 2022 decision.  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal").  Lastly, because the case will be remanded for consideration of the new evidence, the Court does not reach plaintiff's other five claims of error, including that the ALJ failed to properly weigh the medical opinions; the ALJ failed to adequately develop the medical opinion record; the RFC determination was not supported by substantial evidence; the ALJ's Step 2 severity evaluation was legally flawed; and the VE's testimony at Step 5 was unreliable.

## E.  CONCLUSION

For the foregoing reasons, plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 13, is GRANTED and the Commissioner's Motion to Affirm, ECF 17, is DENIED.

This is not a recommended ruling.  The consent of the parties allows a magistrate judge to direct the entry of a judgment of the District Court in accordance with the Federal Rules of Civil Procedure.  Appeals from this judgment can be made directly to the appropriate United

States court of appeals.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

SO ORDERED, this 1st day of August, 2024, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge